UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 3:17-CR-15 |
| | ) | Judge Phillips |
| WESLEY COOK | ) | |

# **MEMORANDUM AND ORDER**

Defendant Wesley Cook pled guilty to failing to register as a sex offender under the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250(a). The United States Probation Office has prepared and disclosed a revised Presentence Investigation Report ("PSR") [Doc. 22]. The defendant has filed objections to four of the proposed special conditions of supervised release in paragraph 88 of the revised PSR [Docs. 20, 24]. The government has responded by concurring in the Probation Officer's recommendation of the proposed special conditions [Doc. 26]. The Probation Office has also responded to the objections and declined to remove the proposed special conditions [Doc. 27].

## I. Background

In 2011, the defendant was convicted of Rape in the Court of Common Pleas for Cuyahoga County, Ohio, a Tier III offense [PSR ¶ 47]. This offense involved three child victims, ages 5, 5 and 8, and included physical sexual contact [*Id.*]. It is noteworthy that the description of these crimes indicates that defendant "committed the offenses by holding

the victims down and locking doors" [*Id.*]. Following this conviction, the defendant was required to register as a sex offender under SORNA [PSR ¶ 9].

After a three-year term of incarceration, the defendant was supervised by the State of Tennessee [PSR ¶ 47].[1] In July 2016, the Tennessee Department of Corrections reported to the State of Ohio that the defendant had violated the terms of his parole, including testing positive for marijuana, possession of marijuana, having pornography on his phone, and failing to attend sex offender treatment [PSR ¶¶ 5, 47]. In August 2016, the defendant was ordered to return to Cleveland, Ohio for a parole hearing during which the Ohio Parole Board ordered the defendant to remain in Ohio for the duration of his parole, that is, until 2019 [PSR ¶ 5]. The defendant admittedly did not do so and returned to Tennessee [*Id.* at ¶ 6]. The defendant did not notify law enforcement or update his sex offender registration status from August 2016 until his arrest on October 20, 2016 [*Id.* at ¶¶ 6, 9]. The defendant was indicted in the instant case in February 2017 [Doc. 1].

II.    Analysis

The defendant's objections pertain to the recommended imposition of four special sex-offender supervision conditions taken from this Court's Standing Order 15-06. It is worth noting that defendant has not objected to *all* of the proposed special sex-offender supervision conditions. *See, e.g.*, PSR paragraphs 88(b) – (f), (j)—(k), (m).

---

[1] The Court infers from the PSR that the State of Ohio refers to this type of supervision as "Post Release Control or "PRC" [*see* PSR ¶ 47].

Special conditions of supervised release must be "reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)." 18 U.S.C. § 3583(d)(1). They must also impose "no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D)," and be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(2), (d)(3). The Sixth Circuit set forth the following factors for consideration in imposing special conditions of supervised release:

> A sentencing court may impose a non-mandatory condition of supervised release only if it meets three requirements. First, the condition must be "reasonably related to" several sentencing factors. These factors are "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner." Second, the condition must "involve[] no greater deprivation of liberty than is reasonably necessary for" several sentencing purposes. These purposes are "to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner." Third, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission." Because they are written in the conjunctive, a condition must satisfy all three requirements. However, a condition need not satisfy every single factor and purpose within each of the first two requirements.

*United States v. Carter*, 463 F.3d 526, 529 (6th Cir. 2006) (citations omitted).

In *Carter*, the defendant pled guilty in 2001 to being a felon in possession of a firearm. In 2005, the district court added a supervised release condition pertaining to sex offenders. Carter's criminal history included 1988 convictions for rape and assault with

3

intent to commit rape, along with a 2004 stalking conviction. The Sixth Circuit concluded that the 1988 convictions were too remote in time to justify the 2005 imposition of a sex-offender-treatment condition. *Id.* at 532. Carter's case was remanded for the district court to determine whether the 2004 stalking offense was sufficiently sexual in nature to justify imposition of the special condition. *Id.* at 533.

*Carter* did not "decide precisely how much time must elapse before a sex offense becomes too remote in time to be reasonably related to a sex-offender condition." *Id.* at 532. Subsequently, the Sixth Circuit has affirmed the imposition of sex-offender conditions based on multiple sex offenses occurring as recently as 12 years prior. *See United States v. Brogdon*, 503 F.3d 555, 565 (6th Cir. 2007). In the 2006 case of *United States v. Perkins*, 207 F. App'x 559, the Sixth Circuit upheld a sex-offender-treatment condition in light of a 1995 sex offense conviction, a 1994 assault conviction, and older assault *charges*. *Id.* at 562.

A. <u>Sex Offender Mental Health Treatment</u>

Defendant's first objection is to paragraph 88(a) which recommends the imposition of special condition found in SO-15-06(1):

> The defendant shall participate in a program of sex offender mental health treatment at his/her own expense, as approved by the probation officer, until such time as he/she is discharged from treatment by the provider and as approved by the probation officer. The defendant shall comply with the policies and procedures of the treatment program. The defendant shall waive all rights to confidentiality regarding sex offender mental health treatment in order to allow release of information to the United States Probation Officer, and to authorize open communication between the probation officer and the treatment providers. (Any reference to the defendant paying for counseling, treatment, and/or assessments is an indication that the United States

4

> Probation Office will conduct a routine financial assessment of the defendant's ability to pay.)

[PSR ¶ 88(a)].

Defendant objects to this proposed special condition because there is no indication in the PSR that he has committed or attempted any conduct related to a sex offense other than the underlying offense that requires him to register under SORNA [Doc. 24 at p. 2]. Defendant argues that there is nothing in the PSR which indicates he is a threat to commit another sex offense and there is no connection between sex offender treatment and ensuring he maintains his registration [*Id*. at p. 3]. Defendant correctly notes that his failure to register as a sex offender, the offense in the instant case, is not a "sex offense" as defined by U.S.S.G. §5D1.2, app. n.1.

The Probation Officer notes that the defendant has not completed sex offender treatment, one of the ways in which he violated the terms of his supervision [Doc. 27]. Both the Probation Officer and the government note the defendant's lengthy criminal history and the "horrendous" nature of his underlying sex offense [*Id*.; Doc. 26 at pp. 2—3]. The government also notes the relatively short temporal proximity between his prior sex offense and the instant offense, seven years, and his release from prison four years ago [*Id*. at p. 3].

The record reflects that the underlying sex offense and conviction occurred in 2011 and the defendant was released from imprisonment to Post Release Control in 2014 [PSR ¶ 47]. The defendant violated the terms of his supervision in 2016, a mere two years later [*Id*., ¶¶ 5—6]. Thus, this case is distinguishable from *Carter*, as the defendant tacitly

admits [Doc. 24 at p. 3], because the prior sex offense occurred 5 years prior to his failure to register.

In addition to the much closer temporal proximity, the Court notes that this defendant has a history of violent and noncompliant behavior, similar to the defendant in the *Perkins* case. The defendant's criminal history reveals the following prior convictions across six states: Second Degree Grand Theft, Hit and Run Involving Personal Injury, Shoplifting, Assault, Unauthorized Use of a Vehicle, Theft, Burglary, Criminal Conspiracy, Criminal Possession of Stolen Property, Assault and Battery, Escape, Attempted Second Degree Burglary, Resisting Arrest, Worthless Checks, and Evading Arrest [PSR ¶¶ 28—48]. The defendant has a history of probation violations [*Id*. at ¶¶ 35, 37—38, 41—43, 46—47]. The defendant appears to have pending charges in the Circuit Court of Dallas County, Missouri, although those charges are over ten years old [PSR ¶¶ 53—55]. In addition, it is also worth noting that the defendant has had numerous other arrests which also include allegations of violent and non-compliant behavior [PSR ¶¶ 56—64]. In short, the Court concurs with the government's characterization of the defendant as a violent individual who lacks respect for the law and presents a threat to the public safety.

More importantly, the Court observes that the defendant was ordered to undergo sex offender treatment as a result of his underlying sex offense and he did not do so. Although defendant advised the Probation Officer that he completed sex offender treatment at the Madison Correctional Institute in London, Ohio, the records from that institution do not indicate that the defendant participated in a sex offender treatment program [PSR ¶ 71].

Further, while the defendant did participate in some sex offender treatment while on parole, he did not attend the program as required and this failure was one of the bases for his parole violation [*Id.*]. Defendant has submitted information from a preliminary hearing on his violations conducted by the Tennessee Department of Corrections in which he admitted that he stopped attending sex offender treatment classes because the time conflicted with his work schedule [Doc. 24-1 at p. 3]. Thus, the record reveals that the defendant has not received adequate rehabilitative treatment for the underlying sex offense. Finally, it is worth repeating that the defendant was convicted of rape of three very young children, by means of "holding the victims down and locking doors" [PSR ¶ 47]. The defendant was also accused of showing the victims pornography and he "recklessly tortured or cruelly abused" two of the victims [*Id.*]. In sum, the egregious nature and circumstances of the underlying sex offense and the defendant's failure to receive adequate treatment lend support to the need for further rehabilitation.

Certainly, the defendant presents a risk that he may fail to register as a sex offender in the appropriate jurisdiction or fail to comply with the terms of his supervision again. However, the history and characteristics of this defendant suggest that he also presents a risk of further violent criminal conduct toward the public. Thus, the Court finds that a special condition of supervision requiring sex offender mental health treatment is appropriate. The proposed special condition will address a deficiency in his rehabilitation and provide the defendant with necessary treatment. The proposed condition requires no greater deprivation of liberty than reasonably necessary and is not inconsistent with any policy statements in the Sentencing Guidelines. Accordingly, the Court finds that this

proposed special condition of supervision is reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a) and the defendant's objection to PSR paragraph 88(a) is **OVERRULED**.

B.      <u>Psychosexual Assessment</u>

Defendant objects to PSR paragraph 88(h) which proposes the following special condition found in SO-15-06(8):

> The defendant shall submit to psychosexual assessment at his/her own expense, as directed by the probation officer.

[PSR ¶ 88(h)]. The defendant particularly objects to any requirement for plethysmograph testing, which he presumes is still used by a local testing agency, as unreliable and highly invasive [Doc. 24 at pp. 3—5].[2] The defendant also contends that this type of testing would not benefit his rehabilitation and would be unduly burdensome in light of his indigency [*Id*. at p. 5].

The Probation Officer notes that the defendant has never had a psychosexual evaluation and therefore the danger he poses to the community, particularly to small children, has never been evaluated by a mental health professional [Doc. 27]. The Probation Officer also contends that a psychosexual evaluation "whether or not it includes plethysmograph testing" is a tool that will help the Probation Office perform its duty of protecting the public [*Id*.]. The government states that it is not seeking the imposition of

---

[2]The Court observes that defendant's objection to plethysmograph testing that *may or may not* be utilized by a testing agency or directed by defendant's supervising probation officer in the future is somewhat hypothetical and therefore not ripe. *United States v. Lee*, 502 F.3d 447, 450 (6th Cir. 2007).

plethysmograph testing as part of this proposed special condition [Doc. 26 at p. 1, n.2]. Further, the government contends that physiological testing may be beneficial as an adjunct to sex offender treatment and as a measurement of the defendant's progress in treatment [*Id.* at p. 2].

Although the instant offense is a failure to register as a sex offender, rather than a current sex offense, the Court finds that this condition is appropriate in light of the defendant's history, characteristics, and the need to protect the public from further crimes of the defendant, as set forth above. The Court also observes that the condition, as written, makes no mention of plethysmograph testing, which is the primary focus of defendant's objection. Accordingly, the defendant's objection to PSR paragraph 88(h) is **OVERRULED**. However, the Court agrees that plethysmograph testing is highly invasive and not substantially related to the goals of sentencing. Accordingly, the Court directs that the proposed special condition be modified as follows: "The defendant shall submit to a psychosexual assessment, *with the exception of plethysmograph testing*, at his own expense, as directed by the probation officer."

    C.    <u>Polygraph Testing</u>

Defendant's third objection is to PSR paragraph 88(i) which proposes the following special condition found in SO-15-06(9):

> The defendant shall submit to polygraph testing at his/her own expense, as directed by the probation officer, in order to determine if he/she is in compliance with the conditions of supervision, or to facilitate sex offender treatment. The defendant shall be truthful during polygraph evaluations.

9

[PSR at ¶ 88(i)]. The defendant relies on his previous arguments and further notes that polygraph evidence is disfavored as unreliable in the Sixth Circuit. Thus, defendant argues that significant liberty interests are at stake when the results of a polygraph examination could cause his supervision to be revoked [Doc. 24 at p. 6].

As with the previous objections, the Probation Officer responds that a polygraph examination is a tool to assist the Probation Office in protecting the public [Doc. 27]. The government argues that polygraph testing serves the statutory sentencing purposes of public protection, deterrence, and rehabilitation [Doc. 26 at pp. 5—6]. The government also argues that polygraph examinations may detect deception from a person's demeanor, deter unwanted activities by persons who know they will be questioned about such activities, and elicit admissions or confessions of undesired activity [*Id.*].

While polygraph *evidence* may be unreliable, in the supervision context, polygraphs "are tools to help the probation officer monitor defendant's rehabilitation and compliance with release conditions; the tests are not geared toward the collection of evidence for prosecution of possible future parole violations." *United States v. Wilson*, No. 98-5373, 1998 WL 939987, at *3 (6th Cir. Dec. 22, 1998). The defendant's lengthy criminal history and failure to comply with supervision justify the Probation Officer's concern that defendant will not be truthful about his conduct on supervision. As for defendant's speculative concern over a future revocation of his supervision, he "retains the right to challenge the reliability of polygraph … tests should they be used in the future by the government as a basis for seeking revocation of his supervised release." *Wilson*, 1998 WL 939987, at *3. Accordingly, the Court finds that this condition is appropriate in light of

the defendant's history, characteristics, and the need for deterrence. Therefore, the defendant's objection to PSR paragraph 88(i) is **OVERRULED**.

D. Computer Usage

The defendant's final objection is to PSR paragraph 88(l), which proposes the following special condition found in SO-15-06(12):

> The defendant shall not possess or use a computer or any other electronic device with access to the Internet or any other on-line computer service at any location (including employment), without the approval of the probation officer.

[PSR ¶ 88(l)]. Defendant speculates as to two possible factual bases for the imposition of this condition [Doc. 24 at pp. 6—7]. First, defendant was accused of dissemination of pornography to the minor victims in his underlying sex offense; in response, defendant argues that he did not use a computer in this offense and that the dissemination charge was dismissed. Second, defendant was accused of possessing pornography in his probation revocation proceedings, but that charge was not found to be supported by probable cause [Doc. 24-1]. Thus, defendant contends that there is not enough evidence to support the imposition of this condition.

In response, the Probation Officer notes that the defendant's distribution of pornography to the minor victims is relevant conduct to his sex offense, even if the distribution charge was dismissed, because he did not deny showing pornography to the victims [Doc. 27]. Similarly, although the phone mentioned in the parole violations findings was not defendant's, he did admit to being in possession of the phone [*Id*.]. Thus, the Probation Officer contends that this condition is necessary for the defendant's

rehabilitation and the protection of the community [*Id.*]. The government has not responded specifically in support of this proposed special condition.

The Court first notes that it may accept undisputed portions of the PSR as findings of fact, Fed. R. Crim. P. 32(i)(3)(A), and the defendant has not disputed any of the factual material contained in the PSR. Assuming that the defendant did not use a computer to show pornography to the minor victims of his sex offense, he does not dispute that he showed pornography to them. Further, the evidence regarding his probation violation indicates that the defendant gave his supervising officer two different phone numbers, one of which was found to be a smart phone with internet capability and which contained pornography [Doc. 24-1 at p. 3]. Although the defendant and his aunt testified that the phone belonged to his aunt, there is some evidence that the defendant had access to this device.

The Court next notes that this case involves a SORNA violation, rather than an offense involving child pornography or a sexual offense against a minor. *See, e.g., United States v. Lantz*, 443 F. App'x 135, 144 (6th Cir. 2011); *United States v. Phillips*, 370 F. App'x 610, 621 (6th Cir. 2010). Nor is this a case where a computer or internet access was used to accomplish the crime. *See United States v. Dotson*, 715 F.3d 576, 586 (6th Cir. 2013). The Court also observes that the statutory range for a term of supervised release is five years to life, 18 U.S.C. § 3583(k), with an advisory Guideline range of five years, U.S.S.G. §5D1.2 [PSR ¶¶ 82—83]. Thus, the defendant will not be faced with a lifetime ban on computer or internet access. *Cf. United States v. Maxwell*, 483 F. App'x 233, 239 (6th Cir. 2012). Nevertheless, the Court recognizes "the role of technology in the

workplace and educational institutions" and that defendant's rehabilitation "may well be dependent upon obtaining education that provides the skills necessary for employment." *Dotson*, 715 F.3d at 587.

On balance, the Court finds that this condition of supervision is appropriate. In light of the defendant's history and characteristics, including the facts of his underlying sex offense and his conduct on supervision, the Court is convinced that the defendant will require careful oversight by the Probation Office to assist in his rehabilitation and to protect the public from further crimes. *See Lantz*, 443 F. App'x at 144 (conduct on which defendant was not convicted "is still relevant to tailoring his sentence"). Importantly, the Court also notes that this condition of supervision does not impose a complete ban on computer or internet usage. Instead, the condition simply requires that the defendant obtain prior approval from his probation officer. The Court anticipates that the probation officer would approve the defendant's computer or internet usage for legitimate professional or educational pursuits. *United States v. Wright*, 529 F. App'x 553, 558 (6th Cir. 2013); *Phillips*, 370 F. App'x at 621. Accordingly, the defendant's objection to PSR paragraph 88(l) is **OVERRULED**.

### III. Conclusion

For the reasons set forth herein, the defendant's objections to paragraph 88 of the PSR [Docs. 20, 24] are **OVERRULED**. Sentencing remains set for March 5, 2018, at 10:15 a.m. in Knoxville.

13

IT IS SO ORDERED.

                                                        s/ Thomas W. Phillips
                                          SENIOR UNITED STATES DISTRICT JUDGE